IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JESSICA M. ORTLER,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**STATE OF UTAH and DEPARTMENT OF HEALTH AND HUMAN SERVICES,**<br><br>**Defendants.** | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:24-CV-233-DAK-DBP<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead |

This matter is before the court on Defendant Department of Health and Human Services Partial Motion to Dismiss [ECF No. 18]. On August 1, 2024, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Kinsi G.S. Bollinger, and Defendants were represented by Sophia King. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Beginning in October 2020, Plaintiff Jessica M. Ortler was employed with the State of Utah Department of Health and Human Services ("DHHS"), working with youth who have significant mental illness, emotional disturbance, and/or behavioral disorders. Ortler reported that DHHS negligently handled a high-risk youth who was under State care—including that this youth was being trafficked and at risk of death. After making that report, Ortler alleges that DHHS intentionally made her work environment intolerably hostile and removed accommodations necessary for her to perform her job.

1

When the youth was killed, as Ortler had warned would happen, Ortler claims that others at DHHS tried to scare her into silence. DHHS placed Ortler on leave and investigated Ortler based on what she alleges were unfounded allegations. DHHS found no wrongdoing, but in the process of this investigation, Ortler revealed to DHHS that she had PTSD and ADHD. She told DHHS that it had never interfered with her employment before because of her position's flexible work, which all her colleagues enjoyed. After disclosing this information, Ortler alleges that DHHS removed all schedule flexibility she had previously had with her position, but it did not do so for her colleagues.

When Ortler requested accommodations for her disability due to these new restrictions, DHHS allegedly obstructed the accommodations process for many months until it purported to offer her accommodations. Ortler, however, did not consider the offered accommodations to be accommodations at all. Ortler asserts that she was singled out, isolated, burdened with new duties, and restricted in her schedule when others were not. Ortler claims that DHHS did this to purposefully make her work so intolerable and unaccommodating that she would resign.

On August 22, 2022, Tami Hart at DHHS emailed Ortler, asking if she would be accepting the accommodations DHHS had offered her. On August 26, 2022, Ortler responded to Hart's email, stating that she believed that DHHS' accommodations were unreasonable and that she felt DHHS was "trying to give me no other option but a forced resignation." On August 29, 2022, Hart emailed Ortler asking for clarification on whether Ortler would be accepting DHHS' accommodations and if she would be applying for more leave without pay to continue the interactive process. Hart's email also stated that failing to accept the accommodations, to return to work, or to apply for additional leave without pay would put Ortler in unapproved leave status as of September 1, 2022.

On August 30, 2022, Ortler responded to Hart's email by stating that "the accommodations continue to be unreasonably restricted" and that "[w]ithout the proper accommodations . . . I have no other choice but to be forced by the agency to resign." Ortler did not indicate that she would be applying for more leave without pay. That same day, DHHS emailed Ortler, stating that if she did not apply for additional leave without pay by August 31, 2022, her leave without pay status would expire and she would be in unapproved leave status as of September 1, 2022. DHHS also requested that Ortler confirm if she would be accepting the offered accommodations or resigning her position effective September 1, 2022. Ortler did not respond to DHHS' August 30, 2022 email and did not seek additional leave without pay.

On September 6, 2022, DHHS sent Ortler a letter summarizing the email communications she had with Hart and stating, "please consider this letter as written notice of the Agency's acceptance of [Ortler's] resignation effective September 1, 2022, which was the date your leave without pay ('LWOP') period expired." Ortler refers to this letter in her Second Amended Complaint as when her resignation was accepted, and she was constructively discharged.

Ortler filed her Complaint in this case on March 2, 2023. On December 10, 2023, Ortler filed her Amended Complaint, and on March 20, 2024, she filed her Second Amended Complaint.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendants move to dismiss Ortler's whistleblower retaliation claim under the Utah Protection of Public Employees Act ("APPEA"), Utah Code Ann. § 67-21-3, as untimely and for failing to allege retaliatory action.

1. **Timeliness**

Defendants argue that the court should dismiss Ortler's whistleblower claim as untimely

because UPPEA provides employees with 180 days to bring a whistleblower retaliation claim and Ortler did not bring this action within the 180-day period. Under Utah Code Ann. § 67-21-4(1), a public employee may bring a retaliation claim by "filing a grievance with the Career Service Review Office" or by "bringing a civil action for appropriate injunctive relief, damages, or both, within 180 days after the occurrence of the alleged violation of this chapter."

Ortler filed her initial Complaint in this action alleging a UPPEA whistleblower claim on March 2, 2023. One hundred and eighty days prior to March 1, 2023, was September 3, 2022. Defendants argue that for Ortler's Complaint to be timely filed, some retaliatory action had to have occurred after September 3, 2022. Ortler alleges in her Second Amended Complaint that the retaliatory action occurred when DHHS accepted her resignation on September 6, 2022, and she was constructively discharged: "After months of being subjected to a hostile work environment, Ortler was constructively discharged on September 6, 2022, when her resignation was accepted."

Defendants dispute whether Ortler's resignation constituted a constructive discharge and when the 180-day period began to run. Defendants contend that DHHS accepted Ortler's resignation on September 6, 2022, but stated that it was effective September 1, 2022, because it was the day she went into unprotected leave status. While DHHS sent a letter on September 6, 2022, it claims that this was to acknowledge Ortler's resignation occurred on September 1, 2022, the date her leave without pay expired.

DHHS emailed Ortler on August 30, 2022, stating that if she did not apply for additional leave without pay by August 31, 2022, her leave without pay status would expire and she would be in unapproved leave status as of September 1, 2022. Defendants contend that being in unapproved leave status constitutes the effective date of Ortler's resignation. However, the evidence before the court does not establish that assertion. There is no evidence before the court about what

4

"unapproved leave status" means. DHHS' August 30, 2022 email does not tell Ortler that her employment will terminate as of September 1, 2022. The email states she will be in "unapproved leave status." Defendants argue that the August 30 email made Ortler's options clear, but that assertion is not supported by the terms of the email and the evidence before the court. There is no evidence that unprotected leave status is synonymous with terminated. Defendants have not provided any policy that would clarify what the term "unprotected leave status" means, and such policy would be subject to discovery in any event. It is unknown at this juncture whether Ortler's employment could have continued once she entered unprotected leave status. The fact that she maintained a "status" with her employer other than "resigned" or "terminated" on that date would imply that she had not resigned or been terminated from her employment at that time. The court must draw all inferences in favor of Ortler on this motion to dismiss and, as such, cannot interpret the term "unapproved leave status" in the way Defendants' choose is most helpful to their case. The court can reasonably infer at this stage that it means something other than "your employment will terminate" or DHHS would have simply stated that Ortler's employment would terminate.

      DHHS's follow up September 6, 2022 letter to Ortler, summarizing the email communications she had with Hart and stating, "please consider this letter as written notice of the Agency's acceptance of [Ortler's] resignation effective September 1, 2022, which was the date your leave without pay ('LWOP') period expired," does not help Defendants. The court can reasonably infer that the fact that a letter was necessary to notify Ortler that her employment was terminated implies that her employment was not terminated until DHHS provided such clarification. Defendants argue that the September 6 letter was an arbitrary date someone chose to follow-up with Ortler, but those types of assertions can be explored in discovery. The court cannot just accept such arguments from the moving party. At least at this early stage of the litigation, the

September 6, 2022 letter supports Ortler's allegation that she was constructively discharged when she received this letter and DHHS clarified that it considered her employment terminated. Moreover, at this stage, the court cannot assess whether DHHS' assertion in the letter that the effective date of Ortler's resignation was September 1, 2022, was correct. Whether Ortler's whistleblower claim arises from DHHS' September 6, 2022 letter is a question of fact and improper for the court to decide on a motion to dismiss.

Based on the allegations of Ortler's Complaint, DHHS took action against her on September 6, 2022, that Ortler believed to be retaliatory, and she brought this lawsuit against DHHS within 180-days of that action. The court cannot determine as a matter of law that no plausible facts support Ortler's whistleblower claim under UPPEA. Far too many questions of fact exist with respect to timeliness for this court to grant Defendants' motion to dismiss. Accordingly, the court denies Defendants' Partial Motion to Dismiss as to timeliness.

2. **Retaliatory Act under UPPEA**

If the court finds that Ortler's claim occurred within the statute of limitations, Defendants argue that DHHS' September 6, 2022 letter would be the only thing that happened during the 180-day window and the court would need to consider whether it constitutes a "retaliatory action" under UPPEA.

Defendants argue that UPPEA does not permit a claim to be based on any adverse action. Rather, the employer's action must be one of the retaliatory actions provided for by statute. The Supreme Court has held that "the starting point for interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990). Under UPPEA, Utah Code Ann. § 67-19a-101(11), "retaliatory action" is defined, in

relevant part, as "(a) dismissing the employee . . . or (e) threatening to take any of these actions against the employee."

Defendants assert that an employee's resignation is not one of the listed actions. Ortler, however, does not allege that she resigned. She alleges that DHHS constructively discharged her in retaliation for reporting DHHS' alleged mishandling of a high-risk youth. UPPEA states that dismissing an employee is a retaliatory act. Defendants' argument that UPPEA's definition of a retaliatory act does not include constructive discharge within the term "dismisses" misinterprets how Utah courts have long defined dismissal.

Utah law recognizes that an employer can dismiss an employee through "constructive discharge" and that "a constructive discharge is the same as an actual discharge." *Touchard v. La-Z Boy, Inc.*, 2006 UT 71, ¶ 26, 148 P.3d 945. "[A] constructive discharge is legally regarded as a firing rather than a resignation." *Id.* Constructive discharge occurs when an employee resigns "under working conditions that a reasonable employee would consider intolerable." *Id.* at ¶ 27. In *Sheikh v. Department of Public Safety*, 904 P.2d 1103, 1107 (Utah Ct. App. 1995), the court held that "an involuntary or coerced resignation is equivalent to a discharge." Thus, "the employee's job and wage loss are caused by the employer's intolerable actions" not the actions of the employee. *Christensen v. Lab. Comm'n*, 2023 UT App 100, ¶ 47, 536 P.3d 1114.

Defendants contend that these basic holdings regarding constructive discharge should not be applied in the context of UPPEA. The court disagrees. These decisions provide fundamental tenets of employment law and Defendants provide no good reason for not applying them in the UPPEA context. Defendants' position regarding the interpretation of UPPEA's language is so narrow as to be unworkable in practice. Just because the Legislature did not use a long string of words that could mean the same thing as "dismiss" does not mean that it did not intend to include

all the other terms that are legally synonymous with "dismiss." While the term in the statute is "dismiss," it clearly encompasses "terminates" or "discharges," even though those terms are not used. If the statute encompasses discharge, it encompasses constructive discharge.

Defendants also argue that constructive discharge cannot be a retaliatory act because the actions listed place the employer in the acting position. But this argument misunderstands constructive discharge. Constructive discharge is a form of dismissal because the harm flows from the affirmative actions of the employer as opposed to the employee. *See Christensen*, 2023 UT App ¶ 47. Defendants are still in the acting position when Ortler is constructively discharged. Ortler's emails state that she would be forced to resign if DHHS did not stop retaliating against her. Ortler alleges that she was constructively discharged on September 6, 2022, when DHHS accepted her resignation. Because constructive discharge is a dismissal under Utah law, Ortler has alleged a dismissal and thus retaliatory action under UPPEA. Accordingly, the court denies Defendants' Partial Motion to Dismiss.

## CONCLUSION

Based on the above reasoning, Defendants' Partial Motion to Dismiss [ECF No. 8] is DENIED.

DATED this 15th day of October 2024.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge